Our final case of the day is United States v. Larry. Mr. Carlson. May it please the court. My name is Kent Carlson and I am court-appointed counsel for Torrence Larry. Although I've raised two issues in our brief, I intend to, unless the court has other questions, to focus on the in-furtherance language in 924C. I'm glad you're calling it 924C because your brief calls it 924 copyright symbol over and over and over and over, raising in my mind at least the question whether you edited it after you dictated it. I apologize to the court for that. I did not intend on that happening. You just look at it and it says 924 copyright symbol over and over. How can this brief have ever been reviewed? Judge, I apologize. I have nothing else to say other than I apologize for that. The connection between the firearm and the charged offense has to be more, it can't be a non-theoretical tie to the offense. It's got to be a concrete tie between the firearm and the particular offense. And in this instance, the drugs and gun were located, although in the same room, in effect very close to each other. It is clear from the dealings with the confidential informant that Mr. Larry's drug distributions occurred not in the bedroom, but in the living room, and that he never observed Mr. Larry with a firearm during any of those transactions. The firearm was merely unloaded, sitting on a nightstand in his bedroom, and there is no evidence that that firearm was connected to any of the drug dealings. The confidential informant said he never saw a gun. And what we know is that the jury was instructed, pursuant to the factors that have been often cited and started back in the Fifth Circuit, but this court in United States v. Brown questioned the relevance of many of those factors and, in fact, said many of them did not make a whole lot of difference in connection with things and that the facts of the case really are what needed to control. And I suggest to the court that the facts herein do not show that this gun, in any way, was involved in or furthered the drug transactions that involved the confidential informant and that it was merely present in the same room with the drugs with no further connection. But the definition of in furtherance of is a pretty generous one. It is a generous definition. But you have to show that it's really not related, don't you? Judge, I don't believe that it goes that far. I think the standard is that the government has to show that there is a real connection, not some theoretical connection between the parties. And here the gun is sitting on the nightstand. The loaded magazine is right there. There's testimony that it was just a matter of seconds to pop it in. And the drugs are right there. I mean, it's a fairly small place. This is not the Taj Mahal. It's a little trailer. That's correct. A couple of things, though, Judge. Number one, there were more than one magazine there. There was either three or four, depending upon— I'm not sure that helps him, but, yes, that's right. I remember that. But my point is just it sounds great to say that it could be quickly loaded, but you have to know which magazine went in the gun, and there's no evidence that that was something that he knew. Additionally, one would think that if you were conducting drug transactions and the purpose of the firearm is to protect you and or your drugs during the transaction, it wouldn't be in a different location than where the transactions come down. If you're concerned that you're going to get robbed, you're going to have the firearm with you. Or if you don't have it in the beginning when you go back to get the drugs out of the bedroom, you come back with the gun. There's no evidence of that, and as a matter of fact, again, this is confidential informant said he never saw any weapon. So I suggest, and I think the case law says, that the mere presence of the weapon in close proximity with the drugs in and of itself is not enough. There's got to be something more, and I suggest to the Court that that more is not present here. Unless the Court has any questions, I don't have anything else at this point. Thank you. Mr. Carlson? Mr. Hollard? Good morning, Your Honors, and may it please the Court. Sufficient evidence supports the jury's conclusion that Mr. Larry intended to distribute the cocaine and methamphetamine in his bedroom nightstand, and that the gun in the same nightstand helped further his drug activity. This Court said in the Stevens decision in 2004, if the drugs and gun are found in the same place, it is nearly an inescapable conclusion that they are connected for Section 924C purposes. I'm aware of no decision in the last 19 years that has retreated from that. The standard here is whether any rational juror could have found beyond a reasonable doubt that these two were connected. If this Court thinks it's nearly an inescapable conclusion, it seems to me entirely clear that a rational juror could have made that finding. The gun, if the Court has any questions, Exhibit 13H shows just how small this nightstand was. The gun, the magazine, and the drugs are all inches from each other, next to the point where the defendant was sleeping at the time the agents entered to execute the search warrant. I do not know if Mr. Larry had a gun with him when he sold the drugs to the confidential informant. He had a holster in his room. It's very easy to conceal weapons in your waistband or in a holster and have them with you and not parade the gun in front of the person you're selling the drugs to. I don't know that any of that matters. Stevens alone decides this case. If the Court has any further questions on that or the drug issue, I am happy to address them. Otherwise, I'm also happy to give back the balance of my time and ask that you affirm. I see no questions. Thank you. Anything further, Mr. Carlson? No, Your Honor. Well, Mr. Carlson, the Court appreciates your willingness to accept the appointment in this case, which is taken under advisement.